Today's case will be called as previously announced. The times will be as allotted to counsel. The first case today is number 23-1032, United States v. Christopher N. Condron. At this time, would counsel for the appellant please approach the podium and introduce himself on the record to begin. Good morning, your honors, and may it please the court, Amon Hart for appellant Christopher Condron. With the court's permission, I'd like to reserve two minutes for rebuttal. Two minutes you may. Thank you. As your honors are no doubt aware, this was a complex wire fraud case involved a 14-day jury trial. I believe thousands of pages of exhibits, certainly terms that were not likely familiar to the jury, gasifiers and kilowatts and all sorts of things like that. But on appeal, I think we can keep things somewhat narrower in that when you boil away a lot of the other evidence that came in, the actual evidence supporting each count had insufficiencies and infirmities with regard to each one that rendered the conviction vulnerable on appeal. So with that, I'm going to start in actually slightly out of order on count four because I think count four exemplifies some of the problems with this case very well. Before you get there, may I ask a question? Certainly. About count two, not count four. So regarding your argument that a prejudice show variants related to count two based on the, you call it the blurring of the 2428 placed in service grant and the 4854, the start of construction applications. The government argues that you waived the argument about prejudice based on lack of notice and that you failed to develop the arguments you raised about prejudice based on confusion of the issues before the jury. So my question is, what evidence or portions of the record would you point to as supporting the notion that the government blurred the two applications before the jury and that your client then was prejudiced by that confusion? Sure. So count two, I just want to make sure that we're on the same page. Count two is the wire charged is the application of the 4854 application, right? So I think the concern with count two, and it's both a sufficiency and a variance concern, but on count two, you have this issue where they charge the, I'm just trying to get the indictment language, I apologize. They charge the 4854 submission, that's the one that comes in September, but then the evidence related to that is focused largely on this other wire, right? It's this communication, the cost estimate spreadsheet that gets uploaded.  That's what Pena testifies about in closing. The government talks about the spreadsheet. The spreadsheet was fraudulent, but the wire itself that's charged isn't the spreadsheet. It's not the upload. It's something that takes place six months earlier. So the prejudice, I guess I would say on the variance front, is that argument invites the jury to think, oh, this was an upload in March and this was fraudulent and he was lying and therefore he's guilty, but the actual wire charged isn't that wire. It's something that takes place six months earlier. So that's the blurring that I think creates the prejudice there. Now, I do think there's a separate problem. Counsel, I'm sorry. Can we just backtrack a minute just to make sure? So I'm just, I'm looking at the district court's opinion, which had that handy chart about the counts, and just tell me if I'm wrong, but the error on count two isn't the application number. It's the date. Is that correct? So that was one error. Because 4854 was September 30th rather than September 28th? Yes, although the court did give an honor about instruction, and on appeal we're not saying that the two days difference was in itself the problem. The date issue is the fact that the focus of the government's evidence is this completely uncharged wire that gets sent six months later, the spreadsheet, the cost estimate. The cost estimate. But the actual wire charged is the application itself, which happens six months earlier. But isn't the cost estimate related to the application? It's related to it, but it's not the wire charged. So the issue here, A, there's a confusion issue that we were just talking about, of the jury could think, oh, here's this cost estimate that got uploaded, and think that's actually the wire. That's actually the thing that he did that furthered the problem. But I think there's a larger problem. There's two arguments on this issue, and I want to make sure I don't lose track of the first one, is a sort of sufficiency of the evidence there on the wire itself. Because the 4854 application that gets uploaded in September, the only evidence that the government offered that that was in service of some fraudulent scheme was evidence from six months later, and that's the spreadsheet upload, right? There's literally no other piece of evidence the government has pointed to. Well, they point to that the only purchases made in that application were the Wi-Fi devices. And so for a construction application that was valued in the millions, there was sort of negligible purchases, I presume, suggesting that it was fraudulent at the time it was made. Well, that wasn't the argument the government made at trial. I think that's the problem seeing that argument on appeal, is at trial they didn't say it's fraudulent because the devices don't count, right? Instead they said it's fraudulent because look at this cost estimate. So the devices count. I mean, that argument wasn't raised in trial that somehow the purchase of Wi-Fi devices is insufficient to trigger startup construction. I don't see anywhere in the record that that was the government's argument at trial. I see the government making it now in the brief. Counsel, I thought this was really much simpler, so please tell me if it isn't something. I really want to make sure I understand. The allegations of the government is that your client submitted applications to get money from the government, and those applications were fraudulent. So they're charging the application that was submitted, and then as part of their evidence to show that it was fraudulent, they are introducing the cost estimate, which was a document that needed to be submitted to bolster that application. Am I missing something? Isn't the document relevant and critical because it was bolstering the application for the funds? It's not that it couldn't be relevant, but I think the key issue here is what the government has to prove just elements-wise on wire fraud is that there's a wire. Okay, that's the one, the submission, and that is in furtherance of a scheme. So they have to show, they have to offer evidence that at the time that wire gets submitted, Mr. Condren has some intent for it to further a fraudulent scheme. So the only evidence they offer is not remotely contemporaneous to that. It's something that happened six months later. And, you know, we put it into one case. I'll fully disclaim it. I'm sorry. If it's related to it, I don't understand why you're saying, you're insisting that it has to be contemporaneous. If they can make the connection, I don't understand what the problem is. The issue on that front is just sufficiency. The only evidence, if the only evidence they offer is something that occurs six months after the fact, I don't think as a matter of law that is sufficient to prove the claim here, to prove the evidence. But your client is asking for a lot of money from the government, and then the government says give me some backup documentation, and he submits backup documentation, and it's fraudulent. So, again, why is that insufficient evidence for a rational jury to use? Because they would have to show what his intent was at the time the wire was sent. And that's the Simveda case I cited. But why can't they infer the intent from the evidence at the trial? Well, the only evidence specific to this issue, and I think that gets into maybe a larger problem with the case is it's such a complex trial. There are so many counts. There are so many different pieces of evidence. And you look in the government's brief. There's a line about, oh, well, the jury could have said he committed fraud three times. He probably did it a fourth. I'm paraphrasing a little bit. That's actually not proper for a jury to do. The jury needs to treat the evidence specific to each count, specific to the counts. And so here, when you look at what is the actual evidence related to his intent at the time the wire is submitted, there's literally nothing. The only evidence of his intent comes later with the submission. Obviously, he has other disagreements on that. The government would say we could, and I understand that this alone probably wouldn't be enough, but we could consider prior fraudulent applications by your client as evidence of, like, an ongoing scheme or intent, 404B. You mean like a prior criminal action, like under the rules of evidence? Right. Like, why wouldn't you suggest that the evidence of the prior fraudulent schemes would be improper propensity evidence? Right. I think that's the argument that's being made. As I understood it, I may be wrong. I don't think that that would be proper for a jury to consider because it's propensity evidence. If the government wanted to offer prior criminal acts, there's a whole separate set of notice they have to do under the rules of evidence. That didn't happen here. I mean, obviously, they hadn't been convicted at that point, right? Why couldn't it be considered for evidence of intent or of an ongoing scheme or anything else under 404B? I don't think it could be because, again, you know, these are different projects, right? Like, there were—the crux I'm getting from the government's position is, okay, if a jury found that he committed fraud once, it could have assumed he did it another time. I don't think that the rules of evidence or, you know, general principles of sufficiency permit that. You have to consider—a jury has to consider— You're not addressing Judge Montecalvo's question about common scheme. Sure. So, no, no, let me—I know my time's out. Can I keep answering your question? Yes, please. I hope that's right. Yeah, because I do want to answer it. So, I hear your point that I guess, yes, the jury could have sort of considered there to be a common scheme. But, again, going back to the elements, the government has to prove what his intent was at the time he submits that charged wire in Count 2. That's the 4854 wire. The only evidence they rely on, either at trial or on appeal, is the spreadsheet that happens six months after the fact. And, again, you know, I would encourage you—we cited in the brief—to look at that Symbita case, which says, you know, just as a defendant can't rely on a later thing to immunize it, the government can't rely on later acts alone to show fraudulent intent. I think the government cites a case—the name is escaping me—it's Donovan. I don't think it bears the weight assigned to it because that's really about whether this is admissible at all. The argument I'm making is not that it would have been inadmissible. It's that when standing alone, that is the only evidence. It's not sufficient. I see my time's out. I'm happy to answer other questions. I know there's a lot in this case. I'm good. Thank you. Thank you. Thank you, counsel. At this time, counsel for the government would introduce herself on the record to begin. Good morning. May it please the Court. Alexia DiVincentis on behalf of the United States. To jump right in on the variance issue, the argument that the defendant appeared to have been making in his opening brief was that as a result, that the jury may have been confused as between the 2824 application and the 4854 application. But as we pointed out in our brief, the defendant cited nothing in the trial record to suggest that that actually would have been the case. And, in fact, I think if you dig in on that trial record, you will see that at every juncture where there was discussion of these O wind farm applications, either the defendant or the government or both took pains to point out the distinction between the two. So that claim, I don't believe, holds any water. Now, in the reply brief, the focus seems to change somewhat to the idea that there was a prejudicial variance because at trial the focus of the government's evidence to prove that the 4854 application was fraudulent in large part on this cost estimate. But a few things to point out there. First, the defendant never made this argument before the district court. In fact, the defendant never made any constructive amendment claim as to count two below. And the only prejudicial variance claim he made was about this alleged confusion between the two different types of applications. He never made an argument that he was somehow prejudiced by virtue of the fact that there was a focus on the inflated cost estimate. I guess in terms of that argument, is the evidence of the inflated cost estimate significant enough that it needs to be referenced in the indictment? I don't believe it is, Your Honor. The government isn't required to recite all of its evidence in the indictment. The cost estimate was included on the government's exhibit list that was issued about a month before trial. And I think if you read the cross-examination of Pena, it belies any suggestion that the defendant was somehow unprepared to meet this estimate. The cross-examination goes in quite minute detail through the details of this spreadsheet in comparison to the one that Condren ultimately submitted to the Treasury. And in any event, even if he were somehow surprised, the bottom line is that he's failed to demonstrate any prejudice as a result of that surprise. He has argued for the first time in his reply brief that had he been aware sooner that the government might have been focusing on this cost estimate, he could have, I quote, devised some sort of trial strategy to address that evidence. But he has failed to identify or explain in any way what that trial strategy would have been. And I would point in this court to its 2020 decision in Gaccione, which makes clear that particularly on plein air, it is the defendant's burden to not just say that he might have been able to do something differently, but to actually put some flesh on the bones of that argument and suggest what it is that he might have done differently. The defendant hasn't done so here. And so even if there were a variance by virtue of the focus on the cost estimate, the claim would fail to warrant a new trial. Counsel, can you address your opposing counsel argument about insufficiency that you weren't able, the government wasn't able to show specific intent at the time he submitted the wire based on the cost estimate that he submitted six months later? Of course. This court's case law, including Donovan, is clear that after the fact, evidence can shed light on a defendant's intent at earlier stages of a scheme. But contrary to the defendant's suggestion, the government didn't rely and isn't relying on appeal solely on the idea of the cost estimate to prove that he harbored the requisite fraudulent intent at the time he submitted the application. Rather, our argument also relies on features of the application itself and various actions that preceded it. A start of construction application is meant to be what it sounds like. It is meant to be for a project on which construction has begun. And to that end, an applicant is required to submit a certification that construction has begun. It is required to submit a detailed work schedule and invoices for work completed. Yet here, the evidence showed that despite Condren having claimed to have started construction in December of 2011, the only thing he did relative to progressing this project was to purchase some Wi-Fi devices that the trial event showed just sat in boxes in Pena's office. Now, the point here isn't whether the purchase of the Wi-Fi devices is sufficient to show a start of construction. The point here is that that is the only thing that Condren did. And then in September of 2012, he files an application with a cost estimate that is seemingly invented out of whole cloth because it bears no relation whatsoever either to the cost estimate that 15 months after the alleged start of construction, Condren reached out to Pena to get, or to the cost estimate that Condren ultimately submitted. A jury could rationally find from the totality of this evidence that when he filed the application in September of 2012, Condren intended to do exactly what he had done with prior applications, which was to purchase minimal equipment and then grossly inflate cost estimate. Now, that is not a propensity argument, as various questions have suggested. This was evidence that was intrinsic to the scheme charge. Each of these wires was alleged to have been in furtherance of the same overarching scheme. Can I just back up to make sure I understand you about the estimate? I understand then the estimate fluctuated later. But your argument as to why the evidence of intent at the time the wire was made, and as to why it's not speculative, is because that first estimate was very high and it didn't comport with the application itself, is that? Well, it's various points. It's the fact that the evidence suggested that construction really hadn't started. He had purchased some Wi-Fi devices. And I just want to note, defense has pointed out, that that wasn't the focus of the government's evidence at trial. But that evidence was before the jury. And, in fact, I would refer the court to the joint appendix at pages 2165 to 71, where the district court itself noted that the only alleged, quote-unquote, significant work of a physical nature that had been undertaken was the purchase of Wi-Fi devices. So it's the combination of what very little work had been done and the fact that at the time he submitted the application, the number that he had on that application seemingly came from nowhere. Then the fact that he submitted the grossly inflated cost estimate later on. And, in addition, the fact that the jury had heard evidence that as part of this same overarching scheme to defraud, Conrad had previously submitted various grossly inflated cost estimates. Unless the court has further questions, the government would rest on its brief. Thank you. Thank you. Thank you, counsel. At this time, counsel for the appellant has a two-minute rebuttal. Please remember to reintroduce yourself on the record to begin. Good morning. Again, Eamon Hart for the appellant, Christopher Condren. I just want to jump right in on the Wi-Fi device thing. First of all, just to clarify, this was not, you know, two routers purchased as Lowe's. This was 30,000 Wi-Fi devices. So it was not some, you know, de minimis purchase here. The second thing is, again, the government hasn't pointed to anything about listing that as being the start of construction. That's fraudulent. They didn't argue at trial that, oh, you can't claim start of construction if the only thing you've done is purchase, actually, a very significant amount of Wi-Fi equipment that you're going to use. So I don't see how you can say, okay, this is an application that, well, maybe he could have done more to start construction. That somehow makes it fraudulent. The other overarching thing I want to point out about 4854, it's a start of construction application. Those numbers are by definition estimates. It doesn't request any money at all. In fact, it couldn't request any money. You couldn't request money for this project until the project had been placed into service. So what I'm hearing the government say today is, oh, well, it was only Wi-Fi devices, and, you know, the numbers were big. The numbers on the application are by definition estimates. But don't the estimates still need to be non-fraudulent? Sure, but I think, you know, they haven't, they didn't point to something at trial that said, oh, here's this application he submits in September, and this number is fraudulent. Instead they said, oh, the fraud was here in March he submits this cost estimate from PANYA that he changed. And we did, we pointed this out in the briefs, but the change to the cost estimate isn't about changing the actual cost of each item. It's that Conrad submitted something or caused something to be submitted that featured many more items than PANYA estimated. The per-unit costs were actually lower, I believe. So, again, I just, going back to the arguments here, what I'm hearing is, you know, the Wi-Fi devices, this wasn't really a start of construction. That wasn't the case the government made at trial. I don't think the government can use that now to save it on appeal. Instead, and it's in the brief, I can't remember the page number, the government says, yes, the focus of the evidence was the cost estimate spreadsheet. And at trial, in closing, the government says, look at this spreadsheet. The emphasis was 100% on the spreadsheet as proving the intent of fraud. That spreadsheet's six months after the fact. I just don't think, as a matter of law, it's sufficient to prove intent at the time of the wire. Unless there's anything, any further questions, we'll stand. Thank you, Your Honors. Thank you, Counsel. That ends argument in this case.